Wait just a moment until they get themselves organized and settled. May it please the Court, Lois Meltzer representing Maxner, Inc. This is a case that involves an extension to some extent of the familiar tort of intentional interference with contract in an increasingly common commercial context, what we might call the Walmartization of the market. What we have here is a very large buyer having goods produced in the third world through a middle man. The contract is always with the middle man in the United States, but all of the financial risk is borne by the third world contractor, in this case Maxner. I know the Court is familiar with the facts and arguments in this case, and I would like to focus on just a couple of the Court's findings or non-findings. We had to show two things under the Pleas v. Seattle standard. The first thing we had to show was the wrongfulness of the conduct, and the second thing was the knowledge. And the Court said that we failed to make appropriate – we failed to make a case on either of those. Excuse me, Your Honors, I do need to sit. Can I just take the microphone? No problem. I'm trying to get my face visible here. I hope not to waste too much of my time. You just kind of move over just a tiny bit. Thank you. That would help. Perfect. Okay. Are we okay here now? That's fine. All right. Thank you. Does that work for you? This is fine for me. Can Judge Brunetti see you? Could you help her with the microphone, maybe, just so she doesn't have to juggle her papers, because there's too many things going on. I can get myself up higher. Oh, we don't have that there. If it is easier for Judge Brunetti, it would be on the other side. That's okay. I think I'll get – oops, I'll get over – He's fine. I'll levitate a little bit. I should have gotten the logistics organized a little earlier. That's fine. Okay. We're not taking away your time. I can see you pretty well now. So we're fine. Okay. Okay. We're handy gadgets. Okay. Anyway, back to – back to the argument. There were two – we had to show wrongfulness and we had to show knowledge. I'd like to focus on one of the things the Court didn't make a finding on, and that was not our claim under the UCC, which the Court discussed at some length and which had some problematic aspects. The thing the Court didn't make a finding on was whether Costco had itself been responsible for the defect, which it then used to justify returning these 100,000 bunnies. And that's a – that's completely separate from our claim of wrongfulness under the UCC. We claim Costco itself was negligent. And in fact, the evidence in it really – Just so I understand, that's separate from the UCC and separate from the interference? Well, it's a – it's a – well, the interference claim under Pleas requires a showing of wrongfulness and of knowledge. Right. And we allege two different kinds of wrongfulness. One was that it was a violation of the UCC because they returned goods that were not, in fact, effective. The second was not really – it was a common law – a claim of wrongfulness as a matter of common law negligence. But also, whether or not they could absolve themselves of the UCC requirement that they accept conforming goods, they certainly couldn't by contract say, we have a right to damage these goods and then send them back. So it was wrongful under the Pleas standard if, in fact, Costco was responsible for what they perceived to be a defect. And the evidence really isn't susceptible of any other conclusion. Did the district judge make any findings that go on that issue? Any findings of fact? I know there's an opinion with findings of fact and conclusions of law. And I wondered if any of the factual findings touch on the issue whether Costco caused damage, you know, to the batteries by letting people play with them or whatever. There was no finding on that. And that's one of the problems with the decision. The Court pretty much made no finding on whether the goods were really defective. They essentially found that because Costco, under the contract with Cresha, the middleman, could reject goods if Costco merely alleged they were defective, regardless of the actual defectiveness, the Court never got to the issue of how this damage occurred or whether there was a defect. The only evidence on that score really was what we had was what otherwise is a completely anomalous situation. We have ‑‑ Could I just ask you? I thought the ‑‑ as long as they allegedly contained a defect under the contract, they had the right to reject them as nonconforming. So that's a little different than some of the UCC and other traditional context. But why wouldn't that apply under the contract? I'm not sure. I mean, you're saying that it's not that they were allegedly defective. It's that they were defective because Costco made them. So Air Wars was partially responsible kind of tributary negligence. Yes. Well, it was ‑‑ The analogy I used in the brief, it was as if Costco's forklift went into a pallet of these goods, knocked them over, and they became defective, and then Costco returns them and says, they're defective now, we're not going to pay. The Court did make no finding on whether that was constituted adequate wrongfulness. The only thing it found was we're not even going to decide whether there was anything wrong with these goods, because if Costco reasonably, I guess the Court found, found that the batteries were not operating, there was some liquid, so their contract, which changed the UCC, allowed them to reject nonconforming goods. We argued that that was not a permissible change. But the Court never addressed the issue of whether under that contract provision it would still be wrongful for Costco to damage the goods and then return them. I think under common law it would be wrongful, and as a customary trade practice, which is the Fleas v. Seattle standard. As I said, it pretty much has to have happened that way because what you have are 15 or 20 bunnies in the store which seem to exhibit these defects, not a one of the bunnies that was returned, unopened, exhibited the defect. It's difficult to explain this anomaly other than by the explanation of Maxner's expert, which is when you put the bunnies on and you let them run forever and you don't turn them off, the batteries will run down. This is not – it does not take a genius to figure this out. The only thing that the expert contributed in terms of causation was that it does not produce a liquid as a normal result of overdischarge of the batteries. It was a cheap battery. Pardon? Because of the type of battery they used. It was more inexpensive. It was a nickel. No, it wasn't a nickel. It was a cheaper battery. They identified the type of battery. It was a zinc carbon, and he didn't really identify it as a cheaper battery. It's a different type. Well, he had some sort of – there was some sort of modifier in there, and I don't have it in front of me, but I thought it implied that by selecting this type of battery that you're going to get this result. In other words, if you selected a different battery, whether it's more expensive or not, you wouldn't get the leakage on discharge. I think – well, the Court made no findings, but the actual testimony was this will happen with any kind of battery. It's a different kind of liquid with a zinc than with an alkaline battery. And Costco, of course, approved the batteries, and their own lab had tested it before it was shipped. So it really was not an issue. But did the district court – when you were in the district court and after the trial and there were the findings of fact and conclusions, were those challenged in the district court for failure to address this issue? The issue of the – That you're now talking about, which is really, I guess we'll call it Costco's alleged negligence. I don't recall whether there was an objection on that grounds. See, what I'm – I'm trying to figure out, because I'm hearing this and I had actually kind of placed all this in the P's language and the contract and intentional interference. So the argument you're making now is kind of – it really wasn't the one I was wondering. There was nothing about this in the district court, and I wondered if this was brought to the district court's attention after the findings and conclusions. Well, there was an issue we raised in the pretrial order very clearly that this was – I think they didn't make any findings because – well, for one reason, we were knocked out on the knowledge element. Right. And so you could either be knocked out on any single element, knowledge or wrongful means, improper means. The court simply found we hadn't – we hadn't established wrongful means under the UCC. It didn't address – it wasn't strictly a negligence issue. It didn't address this other grounds of wrongful means. So let me ask you this. If this argument you're making now fits under the wrongful means, it's an aspect of wrongful means. So you're suggesting that the finding of absence of wrongful means would be an error because the district court either didn't consider this or if it considered it, it improperly rejected it. That's our contention. Okay. I'm just trying to fit it in the framework of the judge's order here. The idea sort of that it's wrongful if Costco affects Maxner by saying Maxner's goods were defective if Costco itself made them defective, is that what you're saying by the way they displayed them or what? Yes. I think there's a – it's easy to understand the inherent unfairness in that. It was that Maxner displays them so customers can run the batteries down. The batteries then run down. Maxner's employees know nothing about batteries, so they see this liquid and they think, oh, it's battery acid, and they picture something out of Batman, when in fact it's something that's normal. They don't ask their own lab to evaluate it. They don't allow Maxner at Maxner's request to examine it. They simply return it. But the evidence appears to show that the only way it could have happened was the way that Maxner's expert described, which is that's the only explanation for there being evidence of deterioration in liquid in the bunnies in the store and no evidence of it in the bunnies that are returned. So what – I'm sure we'll hear from Costco on this point, but what was their argument in response to that? I mean, what was the district court faced with in terms of opposing facts or arguments on this question? Costco did not – did not have an expert on the issue of the batteries. They simply said our employees saw this and they thought it looked like battery acid, and so they reasonably returned it. They didn't really have any explanation for what had happened or for the otherwise peculiar fact that the batteries had been tested by Costco's own lab before shipment and had passed, including tests for leakage. So the only explanation presented to the court of what had happened was the expert of – was the testimony of Maxner's expert. Do you – let me just go back to the knowledge issue, which is another element that was specifically addressed. Do you have any case law to support this idea that on the knowledge issue that you can, quote, gain knowledge after your overt act of rejection has been transmitted to the other party? No. This – in this context, it's an issue of first impression. No case has dealt with when the knowledge has to occur. And what I argue is that you have to look at general tort principles, which is do you begin to have a duty to someone once you have knowledge that your actions are going to harm that person? And in other contexts, the answer is yes. We gave the examples of fraudulent concealment, where once you learn that you may – that harm may occur to another, you then have a duty to try to prevent that harm. In a broader context, you might say, let's say you're running a very noisy – you create a lot of noise in your house. Uh-huh. And it's no problem until somebody moves in less than an acre away. Then you may have a duty to do something about the noise. In this case, we were not allowed to present evidence of what might – whether those bunnies were still in the stores by the time Costco received Leonard Goldman's letter. Our argument is if the bunnies had not yet been shipped back to Cretia, and there's good reason to believe they weren't. There were 100,000 of these all over the country. Then, once they got Maxner's letter, they knew at that point that their rejection wasn't merely an issue of a contract with Cretia, that their rejection was an issue of it is going to create harm to a third party, to the third party who, in fact, has the financial – all of the financial load in this transaction. But it – you know, it has some logical appeal. But then I'm also wondering where does it end? You know, in other words, you're kind of like, here's the situation. It's a fixed landscape. I reject these goods, and if I'm now guilty of wrongful interference, you know, so be it. But under your theory, it's like a continuing obligation. So then you send this letter, and then they investigate, and they say, I still reject the goods. But then you find some more evidence, and then you send it to them, and they say, well, you know, and in other words, when does the tort occur? And it really poses some practical problems, and yet your argument has some logical appeal to it. So how do you reconcile that? Well, I think that it's a question – in the context, for example, of determining when a statute of limitation begins to run, the general rule is it's when all of the elements of the tort are there. And what we say is all of the elements of the tort are there as soon as they obtain the knowledge. And that's when it becomes tortious, if it becomes tortious at all. So that once they have the knowledge and once you have the wrongful act, the tort has occurred. It isn't a question of, okay, then they inspect and then they reject again. It's when there are both acts occurring. They don't have to occur simultaneously. Excuse me. Once Costco knows Maxner's story, if – let's just assume that Costco knew they caused the problem, which I'm not saying they did, but let's say they – you just assume that Costco had an understanding the products were not defective before they set them out in the stores, but that they made a mistake in how they displayed them. Now they've gotten screwed up, and someone said, well, let's just get rid of these. You'd say they would have a duty to Maxner, some sort of tort – some sort of duty, which if not acquitted properly is a tort, which you've alleged has interference with contract. So you're saying that if they didn't do what was right at that point. You're saying the district court's fact findings don't address these issues because the district court didn't think they had to be addressed? I guess saying you had no knowledge of them and – Well, I think that there were two errors. One was they didn't address the issue at all of whether Costco's possible complicity or negligence in this took it outside of the UCC or outside of the provision in the contract that allowed them to, if they merely thought it was defective, get rid of it. And on the knowledge issue, they simply – what they did, it was really an issue of exclusion of evidence. They excluded the evidence that Costco had knowledge after the date they made the decision to reject. They unquestionably had knowledge as of March 16th that this was going to damage Maxner and that Maxner was not going to be paid and that Maxner was the real party. Of course, they had general knowledge before. You know, I guess I'm still having – even if they had knowledge afterwards – I mean, they obviously had to have sort of inferential knowledge that there was a contract with somebody somewhere, right? Yes.  I'm still wondering whether even if you say, well, they had knowledge either indirectly at first or directly once they get the letter, they have knowledge, but do you still – could you meet that they intentionally interfered or that they induced the breach or that they interfered for an improper purpose? You'd still have to meet those two even if there was knowledge. And the district court made determinations on that last point, correct? They didn't have to interfere for the purpose of damaging Maxner. I mean, that's where that they – it was sufficient if they knew that their actions were going to harm Maxner. Then the question becomes, did they use wrongful means? Right. Which is when we get to the plea test. When you get back to the negligence issue.  Do you want to save some time for rebuttal? I guess I should save my 54 seconds. 54 seconds. All right. Thank you very much.  Good morning. If it pleases the court, my name is Warren Ream. I represent Costco Wholesale. And at counsel's table is Sage Reeves, who was on the brief. I think perhaps when he was Lord Chancellor of England, Lord Hardwick made a statement that has become a legal maxim that the court has already seized upon in its inquiry to Appellant's counsel. He said, If Appellant's view of the tort of intentional interference with contract persuades this panel, then the law of contract is destroyed. Judge McEwen, you seized on this when you asked, when does it end? If this theory holds, then contract parties will be able to use the law of contract to exercise clear contract rights, in this case with the consent of the other contract party, without stopping and considering whether that conduct will have impact, not in a public policy matter, impact on strangers to the contract, manufacturers, vendors, producers, people who are not only not privy, don't share privity to the contract, but oftentimes are completely unknown to the contract parties. Imagine the chaos that would result if this theory is the law. Well, let me just pose a question at you. Okay. They have no contractual relationship. Maxner has no contract relationship with Costco. But people who have liability for violating a duty in tort have no contract relationship. So let's assume the worst case for Costco, which I'm not saying it's in the record. I'm not saying it's the truth. But I just want to understand this, how this would work. Let's assume Costco buys a product from a middle person, and there's a vendor like Maxner. And Costco makes a mistake in their method of display. And their method of display is such that it causes the product to deteriorate. And some store manager, supervisor who set this up says, Oh, my God, I really made a mistake here. But no problem, instead of eating the X million dollars that we spent on this, we can just tender back to our middle man by saying we think they're defective. Assume that they know that they caused the harm. Would there be a tort? Would that be breach of some duty to the ultimate supplier? Breach of some duty is not a contract. Right. A breach of a tort duty. Not unless Costco used or proven to be a wrongful means, or we can set aside a wrongful means. The question here is Costco, your store as well, did not intend to damage the supplier by what they did. The remedy is a contract. That's what controls the relationship. Costco has a set of contract duties to the contract party. That contract party then has reasonably a set of duties to the party that makes the contract. So does Maxner have a – does the record tell us if Maxner has a remedy vis-a-vis Krishna or the Providence firm? Yes. If its goods were not defective? The record does tell us this. Maxner sued Krishna in the United States District Court in Rhode Island. Had a jury trial and won a substantial judgment based upon their contract relationship, which established that Maxner enjoyed the right to be paid free on the court, I believe, not wrong. As soon as the monies were loaded on the boat, Maxner had the right to pay. We do not know the status of whether that judgment was paid or not, but Maxner enjoys that judgment. And it illustrates the point. People who own contracts have contract rights. Costco had a clear contract right that it negotiated and bargained with Krishna to achieve, that allowed them, upon discovering a potential defect in a product that they had purchased, to contact the vendor, inform them that there was a problem, and return the goods. The vendor accepted that, the package got shipped back to Rhode Island. What about on that point, this is the only question I have, is the district court made a finding of good faith in terms of the return of the allegedly defective goods. But what if it was Costco that made them defective? How would that be a good faith return still, in your view, under the intentional interference, wrongful or improper means problem? Again, the first blush of remedy would be through the contract department. And Krishna would say, gee, those goods aren't defective. That would have the effect of protecting other people that are not part of the contract, like Maxner. But, more importantly, I think the restating would help us. And you're talking about now negligence. Well, I'm talking about the issue she raised that the district court apparently didn't address, which was that it's really Costco's fault that these bunnies ended up like they were. Let me touch upon that, because I think the district court did address it. It did not address the question of negligent conduct, which is negligence was not part of the case. The only claim the district court was concerned with, the court declined the invitation to allow Maxner to amend the complaint to add a negligence claim. Furthermore, the court said that negligence was not an issue. And the reason there were no findings on negligence is that negligence wasn't in the case. But, moreover, let's talk about whether Costco did, in fact, solve the problems with the batteries. There was findings that Maxner, not Costco, chose the batteries that would be pre-installed in the car. Maxner's own expert admitted that Maxner, as Judge Brunetti pointed out, elected to install older-style batteries, and that was the phrase that was actually used. Older-style, that was it. And that Costco was not warned that this type of battery would fail to run. Was there any testimony in the record, if they used Nikads or others, that they wouldn't leak? I couldn't find much. All I could find was older-style. And I think we all know from all our corroded flashlights in our homes that those old batteries did leak. When he said older-style, was there anything in the record that would indicate they could have used others that wouldn't leak? Because there's some anticipation in the record that Costco, having a seasonal eye-catching impulse item, wanted them to operate on-site. And so we know they're going to run, and obviously they run a while, and the batteries die down. So that was sort of endemic into the whole process. So I'm wondering if there was something relative to the extension of that. It was an older-style battery. If we had used blank battery, Nikads or whatever, it wouldn't have happened. The record is complete with the discussion of the fact that Costco purchased the product, and the experts demonstrated that, and that product was made to operate in the store by a customer. And his husband testified to that. Yeah. The expert testified, and I tried to case the claimant, but I believe the expert testified, that other forms of batteries, you know, hydride and the like, don't have the characteristics of leaking upon discharge that zinc-carbon batteries do. And the zinc-carbon batteries are less expensive. These were also batteries that were manufactured in China, and they just simply broke down. There was also a consideration that some of the bunnies that were examined by the four Costco employees that went to the Istanbul warehouse once this problem was being called in tested the bunnies taken from unopened cartons that had been stored in high steel and not made available to Costco's members, indicating and refuting the notion that Costco anyway caused this problem. I'm not sure. Well, it does to it. I guess, too, there's one part is legal and one is factual. The legal issue is whether, you know, this good faith duty that you have, whether under the UCC or the contract, whether this negligence claim can come under there even though it's not a negligence claim. Maybe it's really a good faith claim. In other words, if you did actually cause the damage, then I suppose the return would not have been in good faith. Is that true? Right. Right. Sure. Somebody somewhere probably overseas. Sure. Okay. Looking at the final. Go ahead. I'm sorry. My last point was in. So really, even under the contract, though, you did confer with Krishna. And based on that conferral, the bunnies got rejected. And that really, at least at that point under the facts here as found by the Court, certainly discharged the good faith issue, correct? Not only did Cosco confer with the national representative, Mr. Conferis. Mr. Conferis was invited by Cosco to examine the bunnies, did so, and agreed with Cosco acting on behalf of Krishna that the bunnies should be returned. That question has never been called into doubt. It was never asserted against Cosco. Krishna is not happy with Krishna. And it is logical to see why. Krishna has an interest in maintaining the relations with Cosco, and Cosco has an interest, at the end of the day, in ensuring that the products that it puts upon its sales floor are not harmful to its consuming public. Massner would have Cosco keep those products on the table so that when you went out to buy a dancing bunny fig tree, your child or your grandchild brought it home and it was wet on the outside. You could explain to the child that that was in fact a very mild acid. It wasn't really bad. That bad acid was sort of like lemon juice. And he had it with him when he purchased it. This is, of course, a concern of his own. At the end of the day, Cosco is entitled to rest on its condolences, as we are all entitled to rest on our condolences for him. Any questions? Now let's continue with the questions. I have one. No, thank you. Thank you. Just a couple of clarification on the negligence claim. We had intended to state a direct negligence claim against Cosco, and we couldn't do that because you can't get economic damages for this direct negligence claim. So the negligence comes in rather as an indication of the wrongfulness of the interference. So that's what we're talking about. Thank you. And on the question of batteries, if we can't here today resolve that particular factual issue, the evidence was pretty open-minded that there was nothing wrong with batteries for purposes for which they were to be used, and they were approved by Cosco, in which someone came in and said, we wish you would use much more expensive batteries that wouldn't corrode. This was a little seasonal Easter Bunny. The chances are it wasn't going to be used by any normal customer in such a way that the batteries would run down completely. The only reason it happened is because it's sitting in the store, and in fact it's very key to all these kids pushing it in terms of bringing their kids to different hospitals. It's not a fact, but the point is the judge never made any findings on that issue, and if that was, that would have been grounds for wrongfulness, it was there for the judge not to make a finding on it. And I would argue that the evidence was overwhelmingly that it was Cosco's fault.
judges: Brunetti, McKeown, Gould